**Alexandria**
NATIONAL LINEN SERVICE
v.
THOMAS McGUINN
No. 0290-88-4
Decided May 16, 1989

COUNSEL

Benjamin J. Trichilo (Lewis, Tydings, Bryan, Trichilo & Stock, on brief), for appellant.

Metin A. Cay (Ashcraft & Gerel, on brief), for appellee.

OPINION

**MOON, J.**—National Linen Service appeals an Industrial Commission decision awarding Thomas McGuinn temporary partial disability benefits. The employer contends that there was insufficient evidence to support the commission's finding that McGuinn made reasonable efforts to market his remaining work capacity. We hold that the mere fact that the employee obtained a new job, where the pay is substantially less than that received at the old job, is, standing alone, insufficient proof of making a reasonable effort to market one's remaining work capacity.

McGuinn sustained a compensable ankle injury in a motor vehicle accident on August 5, 1983. As of September 10, 1987, McGuinn was diagnosed as having a chronic ligamentous sprain of the lateral ligaments of the left ankle. The injury limited his capacity to stand, walk, or climb, resulting in a ten percent permanent partial loss of use of the left foot effective June 24, 1986.

McGuinn testified that he had worn a leg brace since September, 1986. He was of the opinion that he was unable to return to work as a driver for National Linen Service in part because its trucks are equipped with manual transmissions, making it necessary that he use the injured left foot to change gears. Additionally, he said that the lifting associated with that job was beyond his physical capabilities. Dr. Frank A. Pettrone evaluated McGuinn and found that with an ankle brace McGuinn was able to return to his previous job of driving a truck for the linen service and carrying parcels. He found that McGuinn's gait was smooth and that he could run, hop, and deep knee bend without difficulty. However, National Linen Service did not offer McGuinn a position and McGuinn did not seek one with National Linen.

McGuinn admitted that when he was able to go back to work, he did not seek other employment, except with his father who owned a number of Weenie Beanie sandwich shops. He did not ask his father what his pay would be; he left that matter to his father, whom he thought would be fair. His job entailed driving employees to work in the morning, working the window for breakfast for about an hour and a half, making up the banking deposit, going to the bank, working the window through lunch for about two hours, driving employees home, and returning to check on the stores after they closed. McGuinn stated that if he stood on his foot for four hours, it started to bother him. His father worked things out so that he could get off his feet during the course of the work day and not be on his feet constantly.

■ Code § 65.1-63 and *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985), clearly require a disabled employee to make a "reasonable effort" to market his remaining work capacity in order to receive continued workers' compensation benefits. Further, since the hearing in this case was on McGuinn's application, McGuinn had the burden of proving that he made a reasonable effort to find suitable employment.

■ McGuinn contends that mere employment is proof that he marketed his remaining work capacity. We disagree. Code § 65.1-55 provides that a claimant will receive compensation in the amount of two-thirds "of the difference between his average weekly wages before the injury and the average weekly wages which he is *able to earn* thereafter" (emphasis added). The key phrase as applied to this case is "able to earn," which we construe not to be synonymous with "earns" or "is paid." Therefore, a claimant who has the burden of proof, as McGuinn, and who seeks compensation of the wage differential between his new and his old jobs, has the burden of proving that he has made a reasonable effort to market his full remaining work capacity.

■ In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to McGuinn, as he was the prevailing party before the commission. *Crisp v. Brown's Tyson Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). However, where there is no conflict in the evidence, as here, the question of the sufficiency of the evidence is one of law. *Payne v. Master Roofing & Siding Co.*, 1 Va. App. 413, 416, 339 S.E.2d 559, 560 (1986). Therefore, we must determine whether McGuinn proved that he made a reasonable effort to secure employment within his full remaining work capacity.

McGuinn's only evidence is that he took the job offered by his father. He stated that he did not attempt to find any other job. He offered no explanation as to why he thought the father's job was the best job he could obtain within his work capacity. He did say that he did not feel that he could do the job at National Linen because the loads were often heavier than he thought he should pick up and that the vehicles required the use of the left foot on the clutch. However, he made no effort to find a truck driving job involving automatic transmission vehicles.

In this case, McGuinn did not prove that he is earning what he is "able to earn." He only proved that he had a job at less compensation than he was making prior to his injury.

■ As we pointed out in *Great Atlantic & Pacific Tea Co. v. Bateman*, 4 Va. App. 459, 359 S.E.2d 98, 102 (1987): "The employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon

all the facts and circumstances." While there is no bright line test, we can identify a number of factors that are relevant to a determination of this issue[1] by looking to reported cases in other jurisdictions.

Most jurisdictions that require an employee seeking workers' compensation to prove that he has been unable to market his remaining work capacity also require that the employee prove that he has made a reasonable effort to secure suitable employment within his physical limitations. *See, e.g., Mayer v. Erickson Decorators,* 372 N.W. 729 (Minn. 1985); *In re Compensation of Hall,* 60 Or. App. 750, 654 P.2d 1167 (1982), *review denied, Home Ins. Co. v. Hall,* 294 Or. 536, 660 P.2d 682 (1983); 2 A. Larson, The Law of Workmen's Compensation § 57.61(d). For example, in defining what would be considered a reasonable effort at obtaining employment, the Supreme Court of Maine has stated that the employee must present "some evidence that he had engaged in a *good faith* effort to obtain work within the tolerance of his physical condition" and has failed to find a job, either due to his injury or because no such work was available in the community. *Dunkin Donuts of America, Inc. v. Watson,* 366 A.2d 1121 (Me. 1976)(emphasis added). Other jurisdictions also provide additional criteria for the commission to consider. *See, e.g., Pasco v. Workmen's Compensation Bd.,* 46 Cal. App. 3d 146, 120 Cal. Rptr. 199 (1975)(in calculating a claimant's loss of earning capacity, the board should consider age, health, skill, education, and willingness and opportunity to work); *Ringling Bros. Barnum & Bailey Circus v. O'Blocki,* 496 So. 2d 947 (Fla. Dist. Ct. App. 1986)(the commission should consider claimant's physical impairment, age, industrial history, training, education, motivation, work experience, etc.).

We conclude that such enumerated factors allow the trier of fact to compare the efforts of the employee to that of a reasonable employee in the same or similar circumstances seeking suitable employment in good faith. As a result, we are persuaded that similar guidelines should be considered in Virginia when determining

---

[1] There is a body of Virginia law establishing the requirement to make a reasonable effort to find work. *Washington Metropolitan Area Transit Authority v. Harrison,* 228 Va. at 601, 324 S.E.2d at 655-56; *Fuel Co. v. Agee,* 201 Va. 682, 112 S.E.2d 835 (1960); *Pocahontas Fuel Co. v. Barbour,* 201 Va. 682, 112 S.E.2d 904 (1960); *Island Creek Coal Co. v. Fletcher,* 201 Va. 645, 112 S.E.2d 833 (1960).

whether an employee has made a reasonable effort to market his remaining work capacity.

■ Therefore, in deciding whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with his abilities, the commission should consider such factors as: (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search;[2] (4) the employee's intent in conducting his job search;[3] (5) the availability of jobs in the area suitable for the employee, considering his disability;[4] and (6) any other matter affecting employee's capacity to find suitable employment.[5] The commission, of course, determines

---

[2] For example, the commission should consider whether a reasonable employee would have gone to employment agencies in the area in addition to filing applications with selected employers. Also, the employee should read and respond to help wanted ads in the area. Therefore, an employee should present evidence of: (1) the names of businesses he contacted; (2) the types of positions sought; (3) the number of contacts made; and (4) the time frame within which work was sought. *See Vantage Pointe v. Sowers*, 463 So. 2d 396, 397 (Fla. Dist. Ct. App. 1985).

To remain eligible for unemployment compensation, a claimant must register with the Virginia Employment Commission. Code § 60.2-612(5). If this is reasonable for one seeking employment it is probably more important for one seeking worker's compensation, because the worker's compensation claimant usually is restricted by physical limitations.

[3] The trier of fact should determine whether it was evident from the employee's conduct that he was acting in *good faith* in seeking suitable employment. For instance, a claimant would not be acting in good faith if he or she only applied for jobs similar to the previous employment, for which the claimant is obviously disabled and, therefore, would never be hired. *See Comparetto v. Diaz Corp.*, 431 A.2d 1326 (Me. 1981).

The Court of Appeals of Oregon has stated that evidence that an employee made a "sincere" effort to obtain employment is highly relevant to a determination that he is unemployable. *Blackford v. State Accident Insurance Fund*, 17 Or. App. 358, ____, 521 P.2d 1092, 1094 (1974).

[4] Because the commission can consider reliable hearsay evidence in making its determination, there need not necessarily be any great burden or expense on either side in the presentation of the evidence.

[5] For example, the trier of fact should determine whether the employee cooperated with the employer and if the employer availed itself of its opportunity to assist the claimant in obtaining employment. *See Talley v. Goodwin Bros. Lumber Co.*, 224 Va. 48, 52, 294 S.E.2d 818, 820-21 (1982). Code § 65.1-63 gives the employer the right to offer or find selective employment for the employee, although it has no duty to do so. The employee's unreasonable refusal to take the work is in itself justification to deny compensation.

Other factors that the commission should consider include whether the employee voluntarily removed himself from the job market, *See Baskerville v. Saunders Oil Co.*, 1 Va. App. 188, 192, 336 S.E.2d 512, 514 (1985), whether the employee unreasonably restricted the geographic area of his search, and whether he or she is capable of being retrained.

which of these or other factors are more or less significant with regard to the particular case. Where the commission takes notice of employment conditions in a particular area, such should be stated in the findings of fact along with the findings regarding the other factors considered. *See Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. 374, 384, 363 S.E.2d 433, 438 (1986).

It may well be that McGuinn has the best job that he can obtain within his work capacity. His evidence, however, does not support this conclusion.

Because this opinion establishes an objective standard of reasonableness not articulated at the time of hearing and because the commission may have given consideration and weight to factors not described in its findings of fact, we remand the case to the Industrial Commission for a new hearing.

*Reversed and remanded.*

Duff, J., and Hodges, J., concurred.

---

In any event, it would seem that certain minimal efforts would be expected from every employee, such as registering with the Virginia Employment Commission and referring to the help wanted section of the classified newspaper ads when appropriate.